UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CASE NO. 11-127-HRW

DR. BRADEN FRIEDER,                                                   PLAINTIFF,

v.                    **MEMORANDUM OPINION AND ORDER**

MOREHEAD STATE UNIVERSITY, *et al.*,                                  DEFENDANTS.

\* \* \* \* \* \* \* \*

This matter is before the Court upon Defendants' Motion for Summary Judgment [Docket No. 32]. The motion has been fully briefed [Docket Nos. 32-1, 34 and 37] and, for the reasons stated herein, the Court finds that the Defendants are entitled to judgment as a matter of law.

I.   **FACTUAL BACKGROUND**

This case arises from Plaintiff Dr. Braden Frieder's denial of tenure at Morehead State University ("MSU") and the issuance of a "terminal" employment contract to him for the 2011/2012 academic year.

Plaintiff was hired as a tenure track professor by MSU beginning in the 2006-2007 academic year. He had previously been a tenure track faculty member at Georgia Southern University where he had been dismissed for failure to progress toward tenure. His contract with MSU granted him credit for one (1) year toward tenure based upon his prior teaching experience.

At MSU, Plaintiff was to serve as one of the instructors and the program coordinator for FNA 160, a general education introductory art class and teach two upper

level art history classes while working toward tenured position.

### A. MSU's requirements for tenure.

The requirements for tenure are set out in detail in policy PAc-27, Tenure and Reappointment Review. as well as in the Department of Art's Faculty Evaluation Plan. (FEP). [Docket Nos. 32-3 and 32-4]. As part of the established process, each year Plaintiff was reviewed by the Departmental Tenure / Promotion Review Committee of the Department of Art as well as the chair of the department, Professor Robert Franzini and the Dean of the College. As part of the review, faculty members are to submit a portfolio which, over time develops into their final tenure application portfolio, or dossier. Based upon MSU's policy, referenced above, the award of tenure is based upon performance by a professor in three areas: (1) teaching (2) scholarly activity and (3) service. The usual period of employment for tenure track faculty for application for tenure is five years. Should a faculty member not be awarded tenure in their fifth year of employment, they are provided a one-year terminal contract for the following year after which time their employment terminates.

### B. Plaintiff's tenure reviews.

The Department Committee conducted its first tenure review of Plaintiff on December 8, 2006. As Plaintiff was only months into his contract, there was little to review. A few suggestion were noted with regard to his student evaluation method. The Committee also recommended that he distribute teacher evaluations, knows as IDEA evaluations, to at least one section of his FNA 160 course and to include those

2

evaluations in his portfolio for review the following year. The Committee voted unanimously for Plaintiff's contract to be renewed [Docket No. 32-5].

On January 25, 2007, Defendant, Department Chair Professor Franzini conducted his tenure review of Plaintiff for the 2006 calendar year, as well his performance review, which were generally positive. [Docket No. 32-6]. Therefore, on January 29, 2007, Dr. Michael Seelig, the Dean of the College at that time, forwarded a letter to Provost, Dr. Michael Moore, recommending that Plaintiff's contract be renewed for the 2007/2008 academic year based upon his review of his portfolio. Dr. Seelig commended Plaintiff on his teaching, scholarly activity and professional service, but "encourage[d] him to consult with his department chair and senior faculty colleagues to continually improve the format and content of this portfolio." [Docket No. 32-8].

On October 24, 2007, the Department Committee conducted its 2007 of Plaintiff. With respect to his teaching, it was noted that his IDEA evaluations were mixed. He was advised to take steps to improve in this regard. [Docket No. 32-9].

On November 15, 2007, Professor Franzini completed his 2007 tenure and performance reviews of Plaintiff. He noted that Plaintiff should work to improve his evaluations, but found that Plaintiff's performance was consistent with that of a tenurable faculty member and recommended his renewal for the 2008/2009 academic year. [Docket No. 32-10]. On November 25, 2007, Dean Seelig forwarded his review to the Provost, Dr. Karla Hughes. While recommending contract renewal, Dean Seelig noted the variance in Plaintiff's teacher evaluation ratings and "encourage[d] him to take steps

to bring greater consistency to these ratings perhaps through the Center for Teaching & Learning." [Docket No. 32-11].

On February 6, 2009, the Department Committee conducted its 2008 tenure review. The Committee noted Plaintiff's teaching evaluations for FNA 160 continued to be of concern and made several specific suggestions for improvement. [Docket No. 32-13]. Professor Franzini's evaluation echoed the concerns of the Committee. While rating Plaintiff at the "expected level" he noted that "successfully addressing issues in FNA 160 and class attendance will be required to maintain this rating." He further noted that "an improved level of professionalism in and out of the classroom will be expected." [Docket 32-14]. On March 9, 2009, Defendant, Dr. Scott McBride, at that time Interim Dean for the College, conducted his review of Plaintiff's portfolio. While recommending contract renewal for the 2009/2010 academic year, he advised Plaintiff "to heed all constructive critiques and recommendations made by the tenured faculty and his department chair with emphasis on establishing a record of continuous improvement in teaching." [Docket No. 32-16].

On January 28, 2010 the Department Committee conducted its 2009 tenure review of Plaintiff. It was mixed. Specifically noted was that Plaintiff had "not provided adequate evidence of innovative teaching," that he "[n]eeded to more carefully follow the FEP and consolidate documentation, selecting the most significant," and that "for the past two years, the committee requested the candidate provide a job description and address performance of said duties in the said portfolio for coordination of FNA 160. This will be

4

beneficial to the candidate, but had yet to be addressed." [Docket No. 32-17]. In his February 26, 2010, review, Professor Franzini noted that while Plaintiff received an unanimous vote from the Department Committee, the Committee made specific suggestions for improvement in teaching. Although he recommended contract renewal, Professor Franzini noted that Plaintiff's teaching continued to require attention and his professional achievement agenda needed to be more clearly documented. He stated:

> Your leadership [as FNA/ART 160 Program Coordinator] over the years has generally not been self-initiated and has required chair intervention. Your question during the conversation whether you have to keep teaching the course (FNA/160) makes one question your underlying attitude toward this aspect of your teaching mission.

[Docket No. 32-18].

On March 15, 2010, following his review, Dean McBride forwarded to Provost Hughes his recommendation that Plaintiff's contract be "renewed with reservation." [Docket No. 21-21].

Plaintiff went up for tenure in the 2010-2011 academic year. In September 2010, the Department Committee conducted their review of his tenure application. The Committee noted numerous deficiencies in his tenure portfolio which ultimately led to a 4-1 vote against the award of tenure. The Committee noted the omission of his previous annual performance/tenure reviews (Department Committee, chair and dean) from the portfolio which the Committee requested from the Chair to be included in the tenure portfolio. It was further noted that the candidate was instructed to include all review letters from prior years as early as 2007. [Docket No. 32-23]. The Committee also noted

5

Plaintiff's failure to utilize the Department FEP to outline and organize his portfolio despite requests in the four prior reviews that he do so. [Docket No. 32-23]. In addition, supporting documents were not organized in chronological order or appropriately labeled, course materials and examples of student work were not systemically organized or marked according to semester and year and no summaries were provided for each section of the portfolio. [Docket No. 32-23]. The Committee pointed out that these issues were continuing and had been addressed in his reviews as early as 2007. [Docket No. 32-23].

Also of apparent concern to the Committee was the trend of poor evaluations for ART 160 and specifically that those scores had gone down from the prior year. [Docket No. 32-23]. "The candidate has taken certain steps recommended by the Committee, such as enrollment in campus teaching workshops and soliciting peer review. Other recommendations have not been followed." [Docket No. 32-23].

On October 15, 2010, Professor Franzini reviewed Plaintiff's application for tenure, ultimately recommending against it. He set forth a lengthy list of problems with Plaintiff's IDEA evaluation, portfolio and continued lack of innovative teaching. [Docket No. 32-25]. He emphasized that the "portfolio issues and omissions are not minor, and reflect a lack of thoroughness and professionalism and how Dr. Frieder has addressed the presentation of his work and accomplishments." [Docket No. 32-25].

Dean McBride also recommended against the award of tenure. He stated:

On March 15, 2010 I issued a contract renewal recommendation *with reservation* and with the clear expectation that Dr. Frieder address cited weaknesses. To date, significant areas needing improvement – repeatedly cited and progressively emphasized by the tenured faculty and department

6

> chair since fall, 2007 – have not been adequately addressed. Though his
> service and work have been significant and appreciated, Dr. Frieder has
> demonstrated difficulty with appropriately balancing the weight of the three
> areas of expectation based on the departmental FEP, bringing focused
> planning to his professional agenda and recognizing, accepting and
> addressing specified weaknesses in teaching effectiveness.
>
> Though I remain uncertain about the intentionality of Dr. Frieder's research
> agenda and his promise for sustained professional achievement, his
> shortcomings in teaching are what cause me to render a negative
> recommendation. Specifically, the evidence provided is incomplete and
> often incoherent. . . . the body of evidence reveals systemic and
> fundamental weaknesses in [teaching] that are too glaring to overlook.
> These include, but are not limited to, the lack of clear expectations for
> student achievement, undocumented criteria or rubrics for measuring levels
> of attainment and the absence of feedback on writing assignments. Further,
> Dr. Frieder has been asked to resolve his inconsistent and arbitrary
> application of the grading/attendance policy. Nevertheless, this issue
> continues to surface.

[Docket No. 32-28].

On November 30, 2010, the University Tenure Committee voted 5-4 to recommend against the award of tenure.

By memorandum dated December 16, 2010, Provost Hughes communicated to MSU President Wayne Andrews, her recommendations as to the faculty members who had applied for tenure in 2010. Provost Hughes recommended that Plaintiff and one other faculty member not be granted tenure. President Andrews concurred with Provost Hughes' recommendations.

By letter dated January 21, 2011 President Andrews informed Plaintiff that he concurred with recommendations of the Department Committee, Professor Franzini, Dean McBride, the University Tenure Committee and the Provost that Plaintiff not be granted

7

tenure. [Docket 32-32].

Plaintiff was issued a terminal contract and his employment with MSU concluded on May 12, 2012.

## II. PROCEDURAL HISTORY

Plaintiff filed this lawsuit against Defendants Morehead State University, Dr. Wayne David Andrews, the President of Morehead State University, Scott McBride, the Dean of Caudill College of Arts, Humanities, and Social Sciences and Robert Franzini, Chair of Art and Design Department alleging violation of (1) his right to free speech under the First and Fourteenth Amendment and 42 U.S.C. §1983 (2) denial of tenure due to his disability in violation of KRS 344.030 et seq. and his Equal Protection rights under both the 14th Amendment of the United States Constitution and Kentucky Constitution and (3) breach of contract. [Docket No. 1-1, ¶ 13].

Defendant seek summary judgment as to all claims alleged herein.

## III. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. In 1986, the United States Supreme Court set forth the standard for summary judgment in a trilogy of cases: *Anderson v. Liberty*

8

*Lobby, Inc.* 477 U.S. 242 (1986), *Celotex v. Cartett*, 477 U.S. 317 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Following this precedent and Fed.R.Civ.P. 56©, the moving party is entitled to judgment as a matter of law when "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact." Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

## IV. ANALYSIS

### A. Plaintiff cannot establish the essential elements of his claim of First Amendment retaliation.

Plaintiff alleges "he was treated differently in the review of his tenure application because of his teaching content and style" in violation of his right to free speech under the First and Fourteenth Amendments to the United States Constitution and 42 USC § 1983." [Docket No. 1-1, ¶14]. In other words, he contends that, in denying tenure, MSU retaliated against him for his exercise of free speech.

In furtherance of this claim, during his deposition, Plaintiff recounted a specific instance of Professor Franzini speaking to him with regard to a complaint from student that he had made a gesture known as "the bird" during class and that the student felt it was inappropriate. Plaintiff admitted he used the gesture, explaining that it was done in the context of discussing sinfulness portrayed in art and that bird often appear with

9

images of sinful behavior and that the gesture "the bird" is synonymous with the phallic symbol. [Docket No. 32-2, p. 3]. He testified that Professor Franzini indicated that his behavior "might be inappropriate " and that he interpreted the discussion as Professor Franzini "basically warning me about my speech, and especially material like that." [Docket No. 32-2, p. 4 ].

Plaintiff also testified that Professor Franzini discussed other student complaints with him. One, that he had "humped his desk and simulated a sex act" and another that he told a student that to be offended by the images he showed in class "you'd have to ne a middle-aged woman who isn't getting any." [Docket No. 32-36, pp. 331-334]. Plaintiff denies humping his desk but admits that he made a similar comment to a student.

It seems Plaintiff is arguing that employing "the bird", and other instances of his admittedly "a little over the top" teaching methods are protected by the United Sates Constitution. He is mistaken.

In the landmark decision of *Pickering v. Board of Education*, 391 U.S. 563 (1968) and its progeny *Connick v. Myers*, 461 U.S. 138 (1983) the contours of a First Amendment retaliation claim were established:

> First a court must ascertain whether the relevant speech addressed a matter of public concern. *See Connick v. Myers,* 461 U.S. 138, 143, 103 S. Ct. 1684, 75 L. Ed. 2d. 708 (1983). If the answer is yes, then the court must balance the interest of the public employee —as a citizen in commenting upon matters of public concern. and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d. 811 (1968). Finally, the court must determine whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the

employee. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 571 (1977).

*Farhat v. Jopke,* 370 F.3d 580, 588 (6th Cir. 2004).

First, in order to establish that his speech was constitutionally protected, Plaintiff must show that his speech touched on matters of public concern. In *Connick*, the United States Supreme Court held that matters of public concern are those that can "be fairly considered as relating to a matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146. Plaintiff fails at this threshold as he has not alleged that his in class speech touched upon matters of public concern. Regardless, using "the bird," simulating sex acts, or telling students that if they are offended by images shown in class they are middle aged women who "aren't getting any" does not constitute speech that relates to matters of political, social, or other concern to the community

As for the balancing requirement, a red flag is raised where the speech at issue has been restricted by an employer. This is not, however, the case here. Although Plaintiff devotes much of his response to extolling academic freedom and how it must not be restrained, his argument obscures is the fact that his "speech" was never restricted. The following colloquy occurred during his deposition:

> Q: Did Dr. Franzini in any way tell you that you shouldn't be showing those images?
> A: I think at one point earlier he had suggested using professional judgment about what images I showed.
> Q: But he didn't tell you that you shouldn't show a nude image or that –
> A: No, he did not at any time prohibit me from showing any images.
> Q: Did he tell you to use your professional judgment in how you discussed those images –
> A: Yes.

Q: — and the sexual content?
A: Yes.

[Docket No. 32-36, pp. 334-336]. Plaintiff admits that Professor Franzini deferred to his professional judgment as to his method of instruction and did not restrict the content of his lectures. As such, no "balancing is required."

Plaintiff's claim as to the third requirement as well. He cannot establish that his speech was a factor in the denial of tenure. To the contrary, the evidence of record is clear that tenure was denied based upon poor teaching evaluations and a lack of evidence of improvement in teaching over the course of Plaintiff's employment and his lack of evidenced effort to address the suggestions provided in his prior reviews for improving his teaching. As such, there is no evidence any in-class speech was the substantial or motivating factor in the decision to deny tenure.

As such, Plaintiff has failed to establish a claim of First Amendment retaliation.

**B.     Plaintiff cannot establish the essential elements of his claim of disability discrimination.**

Plaintiff claims MSU denied his tenure application because it "regarded him" as being disabled, thus allegedly violating KRS 344.030, the Kentucky Constitution and the Equal Protection Clause of the Fourteenth Amendment.

KRS 344.040 provides, in pertinent part, that it is an unlawful employment practice for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment...because the person is a qualified individual with a disability. . . ." KRS.040(1)(a) . "Disability" includes

12

"[b]eing regarded as having such an impairment." KRS 344.010(4)( c). In order to prevail on this claim, Plaintiff must show he would have received tenure "but for" this alleged perceived impairment. *Lewis v. Humbolt Acquisition Corp., Inc.*, 681 F.3d. 312, 321 (6th Cir. 2012).

Plaintiff was diagnosed with manic depression in 2006. He did not disclose his disability to his superiors at MSU. However, he claims that perceptions regarding his mental status tainted the tenure process.

The process by which Plaintiff sought tenure was well documented by the MSU and followed established policy. His performance dimmed as he approached the five-year deadline and his final review was consistent with the preceding reviews which were increasingly critical of his performance. There was no mention by his reviewers of any disability, perceived or otherwise.

Second, it is likewise conclusively established that Plaintiff has no evidence whatsoever that any of the Defendants knew of his alleged impairment until after he was denied tenure. He admits that he never told Provost Hughes or President Andrews of a medical condition. [Docket No. 32-36, p. 329]. As with Dean McBride, he asserts that she " accepted the judgment, going on down the ladder, of people I do believe were discriminating against me." [Docket No. 32-36, p. 327]. He acknowledges that neither Dr. Hughes nor President Andrews in any way ever made comments to him that would indicate that they perceived him as being disabled. [Docket No. 32-36, p. 329]. He has offered no evidence Defendants had any knowledge of his disability.

13

By his own testimony Plaintiff can produce no evidence that he was perceived as disabled, only that he was perceived as not effective at his job. There were multiple levels of decision making in the tenure process and has offered no evidence that any, least alone all, of these individuals were motivated by discriminatory intent. The evidence of record is clear that the motivating factor behind the denial of tenure was his poor teaching evaluations and a lack of evidence of improvement in teaching over the course of his employment as well as his failure to adequately organize and support his application for tenure through his tenure portfolio, which failings he acknowledges. [Docket No. 32-36, pp. 209-214, 267]. For these reasons Plaintiff's claim that he should somehow have been accommodated in the tenure process due to his undisclosed disability is without merit.

### C. Plaintiff cannot maintain his claim for breach of contract.

In his response to the Defendants' dispositive motion, Plaintiff makes no argument in support of his claim for breach of contract. Fed. R. Civ. P. 56( c) requires that a party attempting to establish genuinely disputed facts must support the assertion citing to particular portions of the record. Making no argument falls far short of this standard. Therefore, Plaintiff cannot withstand summary judgment as to his claim for breach of contract.

### V. CONCLUSION

Plaintiff has not demonstrated that he engaged in any form of protected speech. Nor has he presented evidence that perceived disability led to his denial of tenure and dismissal from the University. As such, Plaintiff has failed to establish the essential

14

elements of his claims and, therefore, Defendants are entitled to judgment as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 32] be **SUSTAINED**. A judgment in favor of the Defendants will be entered contemporaneously herewith.

This 25th day of November, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge